UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN VELEZ, 83A6764,   **REPORT AND**
                **RECOMMENDATION**
         Plaintiff,

v.   08-CV-0806(A)(M)

C.O. HARTKE, C.O. BRUNER, and
SUPERINTENDENT BURGE,

         Defendants.
_____

    This action was referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings, including hearing and reporting upon dispositive motions [21].[1] Before me are defendants' motion for summary judgment [23] and plaintiff's cross-motion to dismiss defendants' motion for summary judgment [31].[2] For the following reasons, I recommend that defendant's motion be granted and that plaintiff's cross-motion be denied.

## BACKGROUND

    Plaintiff, proceeding *pro se*, seeks to recover damages pursuant to 42 U.S.C. §1983 against defendants arising from his incarceration at the Elmira Correctional Facility

---

[1]  Bracketed references are to the CM/ECF docket entries.

[2]  Although characterized as a cross-motion, I have treated it as plaintiff's opposition to defendants' motion.

("Elmira").  The Complaint [7] asserts two claims against Correctional Officers Russell Hartke and Joel Bruner and Superintendent John Burge.[3]  The first claim alleges:

> "1]. On June 13, 2007, at approximately 2:20 p.m., I was notified by the facility officials that I was scheduled for a medical trip to the Syracuse Hospital for a surgery evaluation due to a lack of movement in either of my arms and neck areas.  Upon arrival at the hospital, I began conversing with one of the R.N.'s who had advised me that my operation was still being delayed and that I was only there to be re-evaluated again.
>
> 2]. At this point I became angry at hearing this and state [*sic*] to the nurse that 'They are playing far too many games with my life'.
> . . .
> 3]. Immediately, C.O. Bruner stood up and came and grabbed me by my neck and slung me out of the Nurses Office.  The Nurse was surprised at this action and began screaming to C.O. Bruner that 'I did not disrespect her in any way, nor did I offend her'.  Both C.O.'s Hartke and Bruner, ignored her and insisted on Man Handling me and then decided to call the Sergeant, and deliberately lied that I had disrespected the nurse and they were returning me to the facility.
>
> 4]. Upon arriving back at the facility, I was immediately placed in SHU, pending a Hearing on trumped up charges by C.O.'s Bruner and Hartke . . . the following day.
>
> 5]. This confinement was illegally imposed and to justify the Officer's putting their hands upon me without provocation of any kind, and thus I was denied minimal Due Process when I was not allowed to call witnesses to hearing in my behalf in violation of chapter 5, title 7 of the NYCRR.
>
> 6]. Superintendent Burge, appointed Captain Hughes to conduct the hearing who failed to call and investigate my witness in violation of the Hearing procedures and had he called them they would have testified to the truthfulness of these events that led up to my being illegally confined in SHU from June to October and I would not have been deprived of receiving my surgery and follow

---

[3] The claims against defendants Fisher and Jane Doe were previously dismissed by Hon. Michael A. Telesca's April 1, 2009 Order [8].

> up treatment of Physical Therapy and any follow up medical treatment that could have been given."

Plaintiff's second claim alleges:

> "7]. On . . . June 13, 2007 through October 3, 2007, because of the inactions and actions of Correction Officers Hartke; Bruner and Jane Doe; John W. Burge; Brian Fischer, Comm. NYS DOCS, actions excluded plaintiff form participation in Physical Therapy that would have been apart of his rehabilitation to heal from the surgery. Plaintiff has to wear a neck-brace at this time due to his not receiving the needed surgery in a reasonable time because of the fabricated Misbehavior report by Officer's Hartke and Bruner.
>
> 8]. On October 3rd, 2007, plaintiff [*sic*] disciplinary hearing was reviewed and reversed."

As a result of this conduct, plaintiff alleges violations of "Disciplinary Due Process  8th and 14th Amendments". Complaint [7], p. 5.[4] Although the *pro se* Complaint only asserts two claims, liberally reading the factual allegations of the Complaint in conjunction with the alleged legal violations, as I must (*see* <u>Caro v. Weintraub</u>, 618 F.3d 94, 97 (2d Cir. 2010)), I find that the Complaint asserts the following four causes of action:

      1)     Use of excessive force by defendants Hartke and Bruner on June 13, 2007 in violation of the Eighth Amendment;

      2)     Denial of due process at plaintiff's disciplinary hearing by defendant Burge in violation of the Fourteenth Amendment;

      3)     Deliberate indifference to plaintiff's medical condition in violation of the Eighth Amendment; and

---

[4] Although not alleged in the Complaint, plaintiff's motion to dismiss defendants' motion for summary judgment alleges that defendants violated his First Amendment rights. Plaintiff's Affirmation [31-2], ¶2(B).

      4)      The filing of a false misbehavior report by defendants Hartke and Bruner in violation of the Fourteenth Amendment.

## ANALYSIS

**A.**    **Summary Judgment Standard**

The standard to be applied on a motion for summary judgment in this Circuit is well settled. "'Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant[.] Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party.'" Ford v. Reynolds, 316 F. 3d 351, 354 (2d Cir. 2003).

**B.**    **Plaintiff's Conceded Claims**

Plaintiff concedes that the due process claim asserted against defendant Burge should be dismissed for lack of personal involvement. Plaintiff's Memorandum of Law [31-4],

Point IV. Because this appears to be the only claim asserted against defendant Burge, I recommend that the complaint be dismissed as to him.[5]

Plaintiff also concedes that he "Does Not State a Claim Under The Eight [*sic*] Amendment For Excessive Force By COs Bruner and Hartke". Plaintiff's Memorandum of Law [31-4], Point II. Therefore, I recommend that plaintiff's Eighth Amendment excessive force claim against defendants Bruner and Hartke arising from the events of June 13, 2007 be dismissed.

In his Memorandum of Law plaintiff appears to assert a distinct Eighth Amendment claim against defendants Bruner and Hartke arising from the cruel and unusual punishment he was subjected to while in SHU confinement. *See* Plaintiff's Memorandum of Law [31-4], p. 5 ("The adverse actions of both C.O. Hartke and Bruner was a deliberate indifference action of cruel and unusual punishment to which staid placement in S.H.U. constitution [*sic*] a loss of liberty was atypical and significant with respect to ordinary conditions of prison life"), p. 10 ("the eight amendment violation of cruel and unusual punishment that plaintiff suffered in S.H.U. on account of defendants adverse action on June 13, 2004 and the spill-over effect therefrom"). Although I find it difficult to discern such a claim from the allegations of the Complaint, I must construe plaintiff's Complaint liberally as a *pro se* litigant. Moreover, defendants fail to argue that this claim was not alleged in the Complaint. Therefore, I will construe the Complaint as asserting it.

---

[5]   Captain Hughes presided over plaintiff's disciplinary hearing, but is not named as a defendant. Defendants' Statement of Undisputed Facts [25], ¶17; Plaintiff's Statement of Facts [31-3], ¶9.

C.   **Failure to Exhaust Administrative Remedies**

Defendants ask that "the complaint . . . be dismissed for failure to exhaust administrative remedies as required by the" Prison Litigation Reform Act ("PLRA") "because the undisputed evidence demonstrates that plaintiff failed to grieve the alleged incident at issue". Defendants' Memorandum of Law [24], p. 8.[6]

DOCS has implemented a three-tier internal grievance procedure: "The first is the filing of a complaint with the facility's Inmate Grievance Review Committee.  The second is an appeal to the facility superintendent.  The final level is an appeal to the DOCS Central Office Review Committee in Albany. . . .  A prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure."  Doe v. Goord, 2004 WL 2829876, *9 (S.D.N.Y. 2004).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

---

[6]   Although plaintiff has agreed to the dismissal of his due process claim arising from his disciplinary hearing, the exhaustion requirements of the PLRA do not apply to this claim. *See* Sease v. Phillips, 2008 WL 2901966, *6 (S.D.N.Y. 2008) ("Sease was not required to exhaust administrative remedies relating to his claims of due process violations. Courts in this district have held that IGP exhaustion is unnecessary where there is an appeal of a disciplinary hearing decision and the behavior underlying the claim has been objected to in the appeals process or the alleged behavior occurred at the disciplinary hearing itself. . . . Sease's claims that his due process rights were violated arose out of the disciplinary hearing and therefore the exhaustion requirements of the PLRA do not apply").

Where an inmate fails to exhaust his or her administrative remedies in accordance with prescribed prison procedures, the following three-part inquiry is appropriate: "[T]he court must [1] ask whether administrative remedies were in fact available to the prisoner. [2] The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. [3] If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." Hemphill v. New York, 380 F. 3d 680, 686 (2d Cir. 2004). *See* Brownell v. Krom, 446 F. 3d 305, 311 (2d Cir. 2006).[7]

According to William Abrunzo, the Supervisor of the Inmate Grievance Program ("IGP") at Elmira, no grievances were filed by plaintiff regarding the allegations of the Complaint. Abrunzo Declaration [26], ¶1 Id., ¶¶ 1, 7, Ex. B. In opposition to defendants' motion, plaintiff attaches a February 5, 2008 letter to defendant Burge stating that he has filed a grievance dated June 18, 2007 "pertaining to staff harassment and assault", but did not receive any response to the grievance. Plaintiff's Memorandum of Law [31-4], Ex. 7. Even assuming

---

[7] "While recognizing that the Supreme Court's decision in *Woodford* [*v. Ngo*, 548 U.S. 81 (2006)] may cast some doubt on the continued viability of the *Hemphill* analysis, the Second Circuit has continued to scrutinize failure to exhaust claims with reference to these three prongs." Hooks v. Howard, 2010 WL 1235236, *4 (N.D.N.Y. 2010).

that this raises a triable issue as to whether plaintiff exhausted (or attempted to exhaust) his administrative remedies, the claims he allegedly grieved in his February 5, 2008 letter are limited to "staff harassment and assault" (id.), which, as discussed above, plaintiff has agreed to dismiss. Thus, it appears that his remaining claims against defendants are unexhausted, and I recommend that they be dismissed on this basis. As discussed below, even if these claims had been administratively exhausted, I would recommend that all of plaintiff's claims, other than his Eighth Amendment deliberate indifference claim arising from the events of June 13, 2007, be dismissed on the merits.

**D.     False Misbehavior Report**

It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report. . . . There must be more, such as retaliation against the prisoner for exercising a constitutional right." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997). Therefore, even if plaintiff had exhausted his administrative remedies, I would recommend that plaintiff's claim arising from the filing of a false misbehavior report be dismissed.

**E.     Personal Involvement of Defendants Bruner and Hartke**

Defendants Bruner and Hartke argue that they lack sufficient personal involvement in plaintiff's SHU confinement and medical care to be held liable for these claims. Defendants' Memorandum of Law [24], pp. 13 n. 2, 16. Both defendants Bruner and Hartke state: "As an officer, I have no authority whatsoever to place an inmate in SHU nor do I have any

authority to determine the disposition of plaintiff's disciplinary hearing. I was not assigned to the SHU block during the relevant time period. Nor do I have any role whatsoever in plaintiff's medical care other than the transport on June 13, 2007.  Inmates' medical care is handled by the medical unit and I have no responsibilities whatsoever in that regard." Bruner Declaration [27], ¶10; Hartke Declaration [29], ¶10.

### 1.      Cruel and Unusual Punishment

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  Under this standard, "[a] plaintiff must thus allege a tangible connection between the acts of a defendant and the injuries suffered." Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986).

Plaintiff does not offer any facts, other than the filing of a false misbehavior report, linking these defendants to his SHU confinement or the conditions of that confinement. Therefore, even if plaintiff had  exhausted his administrative remedies,  I would recommend that plaintiff's Eighth Amendment cruel and unusual punishment claims against defendants Bruner and Hartke arising from his confinement in SHU be dismissed.

### 2.      Deliberate Indifference

Plaintiff argues that "the lack of sufficient discovery denies the opportunity to include relevant medical records pertinent to the medical care that was given in SHU from June 13, 2007 to an after October 3, 2007." Plaintiff's Memorandum of Law [31-4], p .10.  However,

even treating this as a cross-motion for leave to conduct discovery pursuant to Fed. R. Civ. P. ("Rule") 56(f), I would deny it. Rule 56(f) permits additional discovery where necessary to gather additional facts "essential to justify the party's opposition" to a summary judgment motion, if the movant "file[s] an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful". Gualandi v. Adams, 385 F.3d 236, 244 (2d Cir. 2004). Because neither plaintiff's Affidavit nor his Memorandum of Law address these factors, his Rule 56(f) request is insufficient. Therefore, even if plaintiff's claims were exhausted, I would recommend that plaintiff's deliberate indifference claim arising from the medical treatment he received while in SHU confinement be dismissed for lack of personal involvement.

Treating the medical attention he received during his SHU confinement as a distinct occurrence from the events of June 13, 2007, plaintiff argues that defendants Bruner and Hartke were deliberately indifferent to plaintiff's medical needs on June 13, 2007 when they "terminated the hospital appointment, disregarded an excessive risk to plaintiff's health and safety". Plaintiff's Memorandum of Law [31-4], p. 9; Plaintiff's Affidavit [31-2], ¶3. Defendants Hartke and Bruner dispute that they terminated that June 13, 2007 medical appointment, stating that it was terminated by the nurse treating plaintiff at the Upstate Medical Hospital. Hartke Declaration [29], ¶6; Bruner Declaration [27], ¶6.

Even if defendants were responsible for unilaterally terminating the June 13, 2007 medical appointment, they argue that "plaintiff makes no specific allegations of any injury whatsoever, let alone an injury sufficient to satisfy the objective component of an Eighth

Amendment violation" and fails to establish that they acted with deliberate indifference. Defendants' Memorandum of Law [24], p. 15. I agree with defendants.

In order to establish a violation of the Eighth Amendment arising out of inadequate medical treatment, plaintiff must prove that defendants acted with "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). Plaintiff alleges that "the June 13, 2007 medical appointment was expected to be the long over due surgery" (plaintiff's memorandum of law [31-4], p. 5) and that the nurse advised him that his surgery was being delayed at this appointment. Complaint [7], ¶1. To the extent plaintiff's deliberate indifference claim is based on the delay in receiving the necessary surgery (complaint [7], ¶7), such conduct was attributable to the hospital, not defendants.

## CONCLUSION

For these reasons, I recommend that defendants' motion for summary judgment [23] be granted and that plaintiff's motion to dismiss defendants' cross-motion for summary judgment [31] be denied.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by April 8, 2011 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of the Local Rules of Civil Procedure for the Western District of New York, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

**SO ORDERED.**

DATED:      March 22, 2011

                                                          /s/ Jeremiah J. McCarthy  
                                                         JEREMIAH J. MCCARTHY  
                                                         United States Magistrate Judge